UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

RAYMOND W. ACCOLLA,

        Plaintiff,

        -against-                                08 Civ. 7780 (CM)

UNITED STATES GOVERNMENT et al.,

        Defendants.

------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/15/09

MEMORANDUM DECISION AND ORDER GRANTING IN
PART AND DEFERRING IN PART THE GOVERNMENT'S
MOTION TO DISMISS THE COMPLAINT

McMahon, J.:

        The pro se complaint in this action alleges the following facts, which the Court assumes to be true solely for the purposes of this motion:

        Plaintiff pro se was incarcerated in the Westchester County Jail during 2004. He was allegedly held in a "filthy" cell with a mattress that "reeked of urine and feces" and a shower that was "rank with a foul smell." (Pro se Compl.) At some time during 2004, plaintiff slipped and fell against cement blocks in the shower, which resulted in an abrasion to his lower right shoulder. Plaintiff notified his block officer of the injury and asked to see someone in the infirmary. The officer replied that plaintiff would need to place a sick call in the morning. Plaintiff wrote requests, known as "cop outs" to the infirmary three days in a row, but did not receive permission until he was finally taken to the infirmary with a temperature of 105 to 107 degrees. The infirmary staff summoned a physician from the Westchester Medical Center, who ordered a blood test. One week later, the physician returned and informed plaintiff that he had contracted a "fungal bacterial infection." He also tested positive for diabetes. Plaintiff alleges that his diabetes resulted from the WCJ staff's delay in treating his infection with antibiotics.

        At some subsequent date, plaintiff was transferred to federal custody, and was incarcerated in FCI Schuylkill in Minersville, Pennsylvania. At the time of his transfer, plaintiff alleges that he was infected with methicillin-resistant staphylococcus aureus (MRSA), which had been contracted at the Westchester County Jail and which was purportedly dormant in his system. While at FCI Schuylkill, plaintiff developed a fungal bacterial infection to his right leg and foot. He alleges that a Dr. Hendershot and a physician's assistant, Mr. Hubble, did not think the infection was severe. When plaintiff

Copies mailed/faxed/handed to counsel on 7/15/09

1

ran a fever, he was taken to Good Samaritan Hospital in Pottsville, Pennsylvania, for treatment. His condition improved, but his right foot remained swollen. Plaintiff experienced another fungal bacterial infection in his left foot several months later. He experienced dizziness and vomiting. After several weeks of alleged delays, plaintiff was taken back to the hospital. Plaintiff alleges that the FCI Schuylkill medical staff failed to recognize or treat his MRSA. In 2006, the veins in plaintiff's eyes allegedly began to rupture, allegedly as a result of the first bacterial infection. Plaintiff required laser eye surgery. The eye doctor recommended follow-up, but according to the complaint, plaintiff was told that budget problems at FCI Schuylkill made such treatment impossible. As a result, plaintiff contends, his vision is still impaired.

On September 4, 2006, a doctor at Good Samaritan Hospital diagnosed plaintiff with cellulitis of the right foot, rather than MRSA, and so refused to treat plaintiff with Vancomycin, which plaintiff contends is the only drug that deals with MRSA.

In February 2008, FCI Schuylkill medical staff prescribed antibiotics for plaintiff, but he alleges that the medication made him ill. When plaintiff complained, Dr. Hendershot and Mr. Hubble allegedly threatened to report plaintiff for refusing medical services and otherwise disregarded his condition, although ultimately, plaintiff was prescribed ciproflaxcin, Rifampin and Omeprazole. Plaintiff alleges that his right foot and leg became infected on December 28, 2007, accompanied by fever, chills and vomiting. He complained to the FCI Schuylkill medical staff, but was told to wait until the physician's assistant could examine him. On January 2, 2008, plaintiff tried to see a doctor because of serious symptoms, but walked out when no doctor or physician's assistant was available.

Plaintiff filed the instant complaint on June 25, 2008, when he signed it and delivered it to officials at FCI Schuylkill. It was received by the Court's Pro Se Office two days later.

Plaintiff asserts claims against two federal defendants: the United States and an Agent John Flanagan. The allegations against the United States relate to the incidents at FCI Schuylkill. The allegations against Agent John Flanagan are not found in the pleading, but rather in a memorandum of law attached to the complaint. Plaintiff alleges that Agent Flanagan transported him to the Westchester County Jail, signed him over into protective custody and told the jailer to put him in the old section of the facility, rather than in a newer section with federal prisoners. These actions—which were allegedly perpetrated by Agent Flanagan on behalf of the United States with deliberate indifference to a risk of substantial injury to plaintiff in violation of his Eighth Amendment rights (and possibly in reprisal for plaintiff's unwillingness to cooperate with the FBI while being questioned)—necessarily took place sometime in 2004, since that is when plaintiff alleges he began to be incarcerated in the Westchester County Jail.

The Court has been advised that a parallel action has been filed against the United States arising out of the conduct of the medical staff at FCI Schuylkill in the Middle District of Pennsylvania, where the facility is located. According to the Government's

2

brief, The Hon. John E. Jones III, adopting the Report and Recommendation of Magistrate Judge Thomas M. Blewitt, dismissed a number of claims asserted by plaintiff, but declined to dismiss his Federal Tort Claims Act (FCTA) claim against the United States arising out of the actions that took place at FCI Schuylkill, and his claims against Dr. Hendershot and Physician's Assistant Hubble pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

The United States and Agent Flanagan have moved to dismiss the complaint as against them. Flanagan's motion is granted in its entirety. The motion of the United States is granted in part; to the extent it is not granted, the motion is being held in abeyance pending the receipt of certain additional documents.

**Claims Asserted Directly Against the United States**

The claims against the United States arising out of the medical care that plaintiff did or did not receive at FCI Schuylkill are dismissed because they have been brought in the wrong court. FCI Schuylkill is located in the Middle District of Pennsylvania. A civil action on a tort claim against the United States may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred. 28 U.S.C. § 1402(b). At all times relevant to this lawsuit, plaintiff has resided at FCI Schuylkill in the Middle District of Pennsylvania, and claims arising out of his treatment (or lack of treatment) at FCI Schuylkill are properly venued in the Middle District of Pennsylvania. Venue does not lie in the Southern District of New York. Accordingly, plaintiff's claims arising out of events at FCI Schuylkill are dismissed. I understand that plaintiff does not contest this conclusion. There is apparently no need to transfer these claims to the Middle District of Pennsylvania, since plaintiff already has identical claims pending in that court; I do not need to create additional work for Judge Jones of that court.

Claims against the United States arising out of anything that occurred during plaintiff's incarceration at the Westchester County Jail must also be dismissed, for lack of subject matter jurisdiction. The FTCA gives district courts jurisdiction to hear only claims that have been administratively exhausted. 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2675(a). Claims against the United States are forever barred unless they are presented in writing to an appropriate federal agency within two years after the claim accrued. 28 U.S.C. § 2401(b). Failure to submit an administrative claim deprives the court of subject matter jurisdiction to hear the case, Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005), and plaintiff has the burden to plead and prove compliance with the exhaustion requirement. Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999).

The plaintiff does not allege in his pleading that he complied with the FTCA's administrative exhaustion requirement within two years of the incidents that took place in Westchester, nor has he provided evidence that he timely exhausted his claims in

3

response to the Government's motion.[1] The Government concedes that plaintiff filed an administrative claim form with the Bureau of Prisons on November 27, 2007; that the complaint referenced plaintiff's "2004 injury" and contracting a fungal bacterial infection. However, November 27, 2007, is far more than two years after plaintiff was transferred out of the Westchester County Jail (according to the allegations of plaintiff's complaint), so the attempt to exhaust claims arising out of his incarceration in Westchester is untimely as a matter of law.

Plaintiff responds to the Government's motion by asserting that he was unable to exhaust his administrative remedies. In Docket No. 28, "Judge Colleen McMahon Supplemental Documents As Requested by Her Honor In Support of Plaintiffs Claim Explaining Reasons For An Untimely Administrative Claim"—a document filed after the Court held a conference in this matter that turned into argument on the Government's motion—plaintiff expands slightly on these conclusory statements. He states that he was unable to file administrative forms while housed at Westchester County Jail because he was "seriously ill," and because "employees of Westchester County Jail" denied him the "documents required." Plaintiff also notes that he was held in protective custody and locked down 23.5 hours per day for 18 months, and his movements around the jail were limited.

Plaintiff does not allege that he requested specific forms or documents so that he could make legal claims or exhaust administrative remedies, and the Court notes that many inmates who find themselves in protective custody manage to file grievances and administrative or judicial complaints. Nor does he identify the officials who denied him access to forms. The fact that plaintiff was in lock-down, without more, does not justify plaintiff's failure to file an administrative claim against the United States. However, the Government is willing to concede, for purposes of this motion only, that plaintiff was rendered unable to file an administrative complaint while incarcerated in the Westchester County Jail.

However plaintiff, by his own allegation, ceased to be incarcerated at the Westchester County Jail no later than September 2005. At that point, there was still plenty of time for plaintiff to exhaust a claim against the United States under the FCTA for any misconduct that might have been committed by the Bureau of Prisons in choosing to incarcerate plaintiff at the Westchester County Jail back in 2004. Plaintiff's original response addressing the issue of exhaustion does not contend that officials at FCI Schuylkill denied him access to the forms he needed to exhaust administrative remedies. Plaintiff unquestionably obtained those forms from Schuylkill officials in November 2007, because he finally filed an administrative claim at the end of that month. Furthermore, in his original response, plaintiff did not allege any facts tending to show that he was too ill to ask for forms or to file an administrative claim continuously from

---

[1] The Government suggests that the claim should have been exhausted by submitting it to the Bureau of Prisons Regional Office in the region where the claim occurred. Both the Westchester County Jail and FCI Schuylkill are located in the Northeast Region. Ellis, Federal Prison Guidebook (2005-06 ed.).

4

the time of his arrival in Pennsylvania (on some unspecified date prior to September 2005) until November of 2007.

In a reply document entitled "Motion in Response to Assistant U.S. Attorney Joseph N. Cordaro's Letter," dated May 1, 2009, plaintiff attempts to correct this by asserting that he did not file his administrative claim because he had been sick since 2004 and continuing "to date" (i.e., until 2009). Regrettably, plaintiff does not seem to have sent this document to the Pro Se Office and it has not yet been docketed; the Court first saw it late yesterday afternoon, and I do not know if the Government has yet seen it. Nonetheless, it needs to be addressed.

The Court is not persuaded that plaintiff was prevented from exhausting his administrative claim by his medical issues. The debilitating illness that allegedly persists "to date" did not prevent plaintiff from filing an administrative complaint in November 2007, and has not prevented him from preparing and filing innumerable papers in this action. Plaintiff does not indicate in any papers filed with this Court that his illness during the period 2005-2007 was so significantly different in nature as to completely incapacitate him; nothing in plaintiff's description of his medical problems indicates that he was continually hospitalized and/or in such a state of continuous debilitation and incapacity from the date of his arrival at FCI Schuylkill until late 2007 that he was unable at all times throughout that period to exhaust his administrative remedies.

However, in this new document, plaintiff also asserts (albeit in conclusory fashion) that officials at FCI Schuylkill, like the employees of the Westchester County Jail, denied him access to the administrative process. According to plaintiff, "Regions Office has a complete filing of the denial. Additionally, the United States District Court, Middle District of Pennsylvania, before Judge Blewitt has a copy also."

The Court has no idea what plaintiff is talking about, but I clearly have to look into the matter. I direct the Government to obtain any records from "Regions Office" that address the issue of plaintiff's efforts to file a complaint about his treatment while in Westchester County, and to provide them to the Court within twenty days, so that I can make a final ruling on this issue, consistent with Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004); Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004). If there are no documents in the BOP's files dealing with attempts by plaintiff to file an administrative complaint, the Government should so apprise the Court.

Except for the Government's response to this inquiry, the Court will accept no further filings in connection with the exhaustion issue from either side.

### Bivens Claim Against Agent John Flanagan

As noted above, no facts are alleged in the body of plaintiff's pleading that make out a Bivens claim against Agent Flanagan. However, appended to the pleading is a memorandum of law, and in it plaintiff asserts that Agent Flanagan was the FBI agent who delivered him to the Westchester County Jail—an event that occurred sometime in

5

2004, as alleged in the complaint—where plaintiff's downward health spiral commenced due to the allegedly deplorable conditions at that facility. I will assume that the contents of the memorandum are to be deemed incorporated into the complaint.

The Government cites at least three reasons why the Court cannot entertain any claims asserted against Agent Flanagan arising out of his being taken to the Westchester County Jail.

The first reason cited is lack of subject matter jurisdiction. Plaintiff (who bears the burden of pleading and proving exhaustion) has not established that he exhausted his Bivens claim against Agent Flanagan—not only that he did not make a timely attempt to exhaust, but that he did not exhaust at all. Plaintiff's November 2007 administrative complaint was not only filed too late (given that Agent Flanagan necessarily delivered plaintiff to the Westchester County Jail in 2004, more than two years prior to November 2007), but it does not mention the agent at all. Since plaintiff was able to file an administrative complaint in November 2007, there is no excuse for his failing to exhaust his Bivens claim at that time.

Again, plaintiff contends that he was unable to exhaust his administrative remedies while incarcerated at the Westchester County Jail. For the reasons set forth above, plaintiff has not yet established that he was continuously prevented from complying with the exhaustion requirement until November 2007, when he finally filed an administrative complaint. In order to resolve for once and for all the issue of subject matter jurisdiction/exhaustion, the Court needs to see the "complete filing" to which plaintiff refers in his most recent letter.

But even if plaintiff had succeeded in raising a question about his ability to exhaust in a timely manner, I could and would dismiss the Bivens claim, because it is clearly time-barred.

The statute of limitations for filing a complaint alleging a Bivens claim in a court in New York is three years from the date that the plaintiff arguably became aware of his injury. Tapia-Ortiz v. Doe, 171 F.3d 150, 151 (2d Cir. 1999). This occurred, at the earliest, on the date that he was delivered to the Westchester County Jail; and at the latest, when plaintiff became ill as a result of the purportedly life-threatening squalor at the jail. Plaintiff himself alleges that both of these things occurred at some unspecified time in 2004. This lawsuit was commenced when plaintiff delivered his complaint to prison authorities, which took place no earlier than the date he signed the pleading—June 25, 2008. Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). June 25, 2008, is more than three years after the date when plaintiff would have become aware of any injury that resulted from his having been delivered to the Westchester County Jail and placed in the old wing. Thus, the Bivens claim against the agent was time-barred months before the lawsuit was fired.

Under the circumstances, it is not necessary for the Court to reach the Government's alternative argument that the complaint fails to state a cause of action.

6

**Direction to the Clerk of the Court**

The Government's motion to dismiss all claims asserted against FBI Special Agent John Flanagan is granted, and those claims are dismissed with prejudice as barred by the applicable statute of limitations. The Government's motion to dismiss claims asserted against the United States arising out of matters that took place while plaintiff was incarcerated at FCI Schuylkill is also granted, and those claims are dismissed because venue does not lie in the Southern District of New York. They are dismissed without prejudice. Finally, the Government's motion to dismiss the FCTA claims against the United States arising out of plaintiff's confinement in the Westchester County Jail is held in abeyance pending the receipt of documents that allegedly exist, addressing the purported frustration of plaintiff's attempts to exhaust by officials at FCI Schuylkill. The Clerk of the Court is directed to insert this entire paragraph into the docket of this case.

Nothing in this decision addresses plaintiff's claims against Westchester County Jail Warden McCune, Westchester Corrections Commissioner Rocco Pozzi, Medical Director Gail Biley, or the Westchester County Medical Center. Those claims are presently being litigated.

Plaintiff persists in denominating various papers he files as "motions," although they are not motions. For example, plaintiff filed a "Motion in Response to Assistant U.S. Attorney Joseph N. Cordaro's Letter" (as yet undocketed) and a "Motion to Correct Response to Assistant U.S. Attorney Joseph N. Cordaro's Letter" (Docket No. 30) in response to the Government's motion and a "Motion to Subpoena Plaintiff Medical Records" (Docket No. 29). Docket No. 29 is directed to the Westchester County Defendants. Plaintiff's mis-labeling of documents creates no end of docketing difficulties for the Court.

The Clerk of the Court is directed to docket the May 1, 2009 letter as a "Reply on the Issue of Exhaustion," rather that as a "Motion," so that it does not turn up on the Court's motion list. I believe that this document will be Docket No. 32.

The Clerk is further directed to re-docket Docket No. 30 as a "Corrected Response" and to remove it immediately from this Court's motion calendar, because it is not a motion, but a response to a motion.

Finally, as for the motion directed to the Westchester Defendants (Docket No. 29), the Court refers it to The Hon. Ronald Ellis, the United States Magistrate Judge assigned to this case, for resolution.

This constitutes the decision and order of the Court.

7

Dated: July 15, 2009

_____
U.S.D.J.

BY FIRST CLASS MAIL TO ALL PARTIES